Opinion issued July 13, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00195-CV




STERLING BANK, Appellant

V.

WILLARD M, L.L.C., WILLIAM F. YOUNG, WILLARD E. SHUMAN, and
H. RICHARD DICKINSON, AS SUBSTITUTE RECEIVER FOR WILLARD
M, L.L.C., Appellees




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2003-66306




O P I N I O N

          In this summary judgment proceeding, appellant, Sterling Bank (Sterling),
challenges the trial court’s order that taxed more than half a million dollars as costs
of court against Sterling. In two issues on appeal, Sterling contends that the trial
court erred in entering judgment against Sterling for costs of court because (1) the
trial court did not find good cause or state its reasons for why it allocated costs
against Sterling and (2) the items taxed are not costs of court.
          We reverse and render.
Background
          Willard M provides security guard services across the country. In 2002, the
principals of Willard M, Willard E. Shuman and William F. Young, contacted
Sterling about the prospect of financing the acquisition of a commercial security
guard division of International Total Services. 
          To finance the acquisition, Sterling and Willard M executed two promissory
notes on April 29, 2002: a 90-day note in the amount of $3,000,000 and a 90-day
revolving credit note for $3,900,000. Willard M executed a third promissory note
payable to Sterling on July 3, 2003 for $250,000. The notes were secured by a
security agreement dated April 29, 2002, in which Willard M granted Sterling a first
priority security interest in all of Willard M’s assets. The notes matured on December
2, 2003 after a number of extensions. When Willard M defaulted, Sterling sued
Young


 and Shuman. Sterling also filed an emergency application for the
appointment of a receiver. On December 16, 2003, the trial court signed an agreed
order appointing a receiver, which provided that the receiver 
[S]hall be authorized, subject to control of this Court, to do any
and all acts necessary to the proper and lawful conduct of the
receivership, including the following: [s]ell all of the assets and
operations of Willard M, whether done partially over time or in
one sale, and apply the sales proceeds, after deducting all
necessary and proper expenses, to the payment of the Sterling
Indebtedness.
 
          During the receivership, the receiver


 sold Willard M’s assets with court
approval. The trial court also approved Sterling’s motion to foreclose on Willard M’s
accounts receivable. On March 18, 2004, the trial court granted an agreed order to
substitute the receiver.


 Paragraph five of the agreed order states, 
The termination of employment of all remaining Willard M
corporate employees and agents as of March 19, 2004 is hereby
approved. The Bank shall advance sufficient funds to Willard M
under its Revolving Credit Note to satisfy all outstanding salaries
and wages due to such remaining employees for services through
March 19, 2004. On behalf of Willard M, Mr. Dickinson may
retain one or more such employees and/or agents after said date
as independent contractors to assist with the winding down of
Willard M’s operations. Sterling Bank shall advance sufficient
funds to Willard M under its Revolving Credit Note to pay those
independent contractors and at the rates specified on the schedule
attached hereto. 
 
In regard to the independent contractors, four employees were named, including
Dickinson.
          During a June 15, 2004 hearing to approve the sale of Willard M’s assets, the
trial court inquired into a number of documents that had been filed by Willard M
employees who alleged that they had not been paid for the two weeks prior to
termination of employment (February 15 through March 3). The trial court remarked
that “what I’m learning is evidently everybody in the entire company is in the same
situation.” The substitute receiver stated that payroll was paid through February 15,
but that Willard M had no money to pay employees for their last two weeks. The trial
court further stated that she was “very shocked that in a case where there is a Court
ordered receiver, the receiver would not pay the salaries, and if he was unable to pay
the salaries, would not report that fact to the Court.” The trial court further stated,
“[T]he receiver might want to start looking at what they are going to do about this,
because the receiver is who incurred this debt. He was in control of the assets of this
company . . . .” In closing, the trial court stated, “I thought the receiver always paid
all of his expenses and the expenses necessary to support the ongoing business so that
it was a viable business that could be sold, and to have that not funded and yet take
the assets of a sale of a going business and the accounts receivable for the hard work
of these employees and not pay the employees, the equity court of this Court is
struck.” 
          The trial court held another hearing on October 8, 2004. The trial court told
counsel for Sterling and the substitute receiver that it wanted an accounting of all
expenses in the receivership and all the costs to run the receivership, and it stated that
the unpaid costs would be taxed against Sterling. 
          The last hearing occurred on January 24, 2005. There, the trial court granted
Sterling’s motion for summary judgment, awarded $3,349,017.32 to Sterling, the
deficiency amount on three promissory notes, awarded $569,123.97 in attorney’s fees
to Sterling, but sua sponte ordered Sterling to pay the remaining receivership
expenses that were reflected in the substitute receiver’s final accounting dated
December 6, $505,298.45, as costs of court.


 These “costs of court” include (1)
$358,226.43 in Willard M’s unpaid payroll; (2) $18,885.92 in federal payroll taxes;
(3) $52,068.89 in Willard M’s state tax liability; (4) $30,237.43 in Willard M’s
unpaid vendors; and (5) $45,879.78 for a disputed payment owed to WSA Group,
Inc.


 The trial court also ordered Sterling to pay the substitute receiver $13,152.00
for expenses to issue W-2’s for all former Willard M employees for calendar year
2004. 
          Sterling appeals from the trial court’s order that directs Sterling to pay
$505,298.45 to the substitute receiver.
Analysis
          In its first issue on appeal, Sterling argues that the trial court did not state good
cause on the record before assessing $505,298.45 as costs of court against Sterling.
In its second issue on appeal, Sterling argues that the amounts taxed against Sterling
are not costs of court. We agree with Sterling’s second issue, and thus do not reach
the first.
          “Texas statutes and case law delineate which items the court may and may not 
include in costs.” Allen v. Crabtree, 936 S.W.2d 6, 7–8 (Tex. App.—Texarkana
1996, no writ). Rule 131 provides that “[T]he successful party to a suit shall recover
of his adversary all costs incurred therein, except when otherwise provided.” Tex.
R. Civ. P. 131. “‘Costs’ usually refers to fees and charges required by law to be paid
to the courts or some of their officers, the amount of which is fixed by statute or the
court’s rules e.g. filing and service fees.” Ex parte Williams, 866 S.W.2d 751, 753
(Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). “Costs, within the meaning
of Rules 125 through 149 . . . are those items in the clerk’s bill of costs.” Pitts v.
Dallas County Bail Bond Bd., 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet.
denied); see also Tex. R. Civ. P. 125–149. 
          The allocation of costs is a matter for the trial court’s discretion and cannot be
overturned on appeal except for an abuse of discretion. Univ. of Houston-Clear Lake
v. Marsh, 981 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1998, no pet.).
However, the issue in this case is not the allocation of costs, but the assessment of
costs. See Whitley v. King, 581 S.W.2d 541, 544–45 (Tex. Civ. App.—Fort Worth
1979, no writ) (noting that power to tax costs does not include power to tax items
normally not allowed). Generally, in Texas, expenses incurred in prosecuting or
defending a lawsuit are not recoverable as costs, unless permitted by a statute or
equitable principle. Phillips v. Wertz, 579 S.W.2d 279, 280 (Tex. Civ. App.—Dallas
1979, writ ref’d n.r.e.). Under the Civil Practice and Remedies Code, a party may
recover fees of the clerk and service fees due to the court, court reporter fees for the
original of stenographic transcripts, and such other costs and fees permitted to be
awarded by other rules and statutes. Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b)
(Vernon 1997). 
          Here, the trial court ordered Sterling to pay unpaid, unliquidated employee
payroll, federal and state tax liabilities, vendor claims, and other expenses as costs of
court. We have found no authority that these unpaid debts of Willard M are costs that
can be taxed against a party as court costs. Rather, these expenses are properly
designated as business liabilities of Willard M. The only parties to the trial court
proceeding are Sterling, Willard M, and the substitute receiver. None of the parties
who have unpaid claims intervened in this suit. As of yet, no entity has been adjudged
liable for these claims. The liabilities assessed as costs were not generated by the
courts or some of their officers, but rather by Willard M or others—should the
claimants seek a recovery against them. See Ex parte Williams, 866 S.W.2d at 753;
Westech Eng’g Inc. v. Clearwater Constructors, Inc, 835 S.W.2d 190, 206 (Tex.
App.—Austin 1992, no writ) (“‘Costs’ generally do not include costs billed to the
client as part of the attorney’s fee for services provided.”). Accordingly, we conclude
that the trial court abused its discretion in taxing Sterling with items that cannot
properly be designated as costs of court. See Whitley, 581 S.W.2d at 544–45 (holding
that “the power to tax costs, otherwise than by Rule 131 for good cause shown, does
not include the power to tax, as costs, items which are not normally allowed”).
          Because we resolve Sterling’s second issue in its favor, it is unnecessary for us
to address its first issue.
 
 
 
 
 
 
Conclusion
          We reverse the portion of the judgment of the trial court that ordered Sterling
Bank to pay $505,298.45 as costs of court and render judgment that the substitute
receiver of Willard M, LLC, Richard Dickinson, takes nothing from Sterling Bank
as costs of court.


 
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Bland.